IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ROYANNE ANDRON**,

    Plaintiff,

vs.                                    No. **CIV 03-789 MCA/WDS**

**TORGERSON MOTOR SPORTS, L.L.C**,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant *Torgerson Motor Sports, L.L.C.'s Motion for Summary Judgment* [Doc. No. 25] filed on October 12, 2004. Having reviewed the pleadings of record, the relevant law, and otherwise being fully advised in the premises, the Court grants the motion for the reasons set forth below. Defendant Torgerson Motor Sports, L.L.C. is entitled to summary judgment on the negligence claim asserted in Count I of Plaintiff's *Complaint*. As no other claims or Defendants remain pending, this action is dismissed with prejudice.

**I.**      **BACKGROUND**

On May 13, 2003, Plaintiff filed this civil action in state court seeking damages for personal injuries she sustained as a result of being struck by a bull during a rodeo half-time event known as "cowboy poker." On July 3, 2003, the action was removed to this Court based on diversity jurisdiction under 28 U.S.C. § 1332. By stipulation of the parties, Defendant Nautilus Insurance Group was dismissed on September 23, 2003, and all claims

asserted in Counts II, III, and IV of Plaintiff's *Complaint* were dismissed on February 4, 2004. [Doc. No. 14, 16.] As a result, Defendant Torgerson Motor Sports, L.L.C. is the only remaining Defendant in this case, and the only remaining claim against this Defendant is the claim for negligence asserted in Count I of Plaintiff's *Complaint*.

On March 4, 2004, the parties agreed [Doc. No. 17] to a lengthy extension of the case-management deadlines set forth in the *Initial Pretrial Report* [Doc. No. 13], and a new set of deadlines was subsequently imposed in an *Amended Initial Pretrial Report* filed on April 19, 2004. [Doc. No. 18, 19, 20, 22.] The current deadline for the filing of dispositive pretrial motions is October 12, 2004. [Doc. No. 22.]

On that date, Defendant filed a motion for summary judgment seeking the dismissal of Plaintiff's only remaining claim. [Doc. No. 25.] Plaintiff has not filed a timely response to Defendant's motion, and the time for doing so expired more than thirty days ago. The record does not indicate any request for leave to extend the deadline for filing such a response or any additional motion papers.

## II.   ANALYSIS

Under Fed. R. Civ. P. 56(c), the Court may enter summary judgment when the motion papers, affidavits, and other evidence submitted by the parties show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. A "genuine issue" exists where the evidence before the Court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party as to that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986). An issue of fact is "material"

if under the substantive law it is essential to the proper disposition of the claim. See id. at 248. Judgment is appropriate "as a matter of law" if the non-moving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670-71 (10th Cir. 1998).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial). See Celotex Corp., 477 U.S. at 324; Wright-Simmons v. City of Okla. City, 155 F.3d 1264, 1268 (10th Cir. 1998). "To survive summary judgment, 'nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.'" Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995) (quoting Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir.1991)). Thus, "[h]earsay testimony cannot be considered" in ruling on a summary-judgment motion. Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995); see also Starr v. Pearle Vision, Inc., 54 F.3d 1548, 1555 (10th Cir. 1995) (applying this rule to inadmissible hearsay testimony in depositions); Lozano v. Ashcroft, 258 F.3d 1160, 1166 (10th Cir. 2001) (refusing to consider declaration that was based on hearsay rather than personal knowledge and did not attach copies of records referenced therein).

Apart from these limitations imposed by the Federal Rules of Evidence, it is not the Court's role to weigh the evidence, assess the credibility of witnesses, or make factual

3

findings in ruling on a motion for summary judgment. Rather, the Court assumes the admissible evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all admissible evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

When, as here, the non-movant does not file a timely response to a dispositive pretrial motion, the Court may not rely on this fact alone, without further analysis, as the grounds for granting summary judgment in the movant's favor. See Reed v. Bennett, 312 F.3d 1190, 1194-95 (10th Cir. 2002). In order to reach such a result under this scenario, the Court must either perform the sanctions analysis outlined in Meade v. Grubbs, 841 F.2d 1512 (10th Cir. 1988), or "make the determination that judgment for the moving party is 'appropriate' under Rule 56." Reed, 312 F.3d at 1195. In this case, the Court relies on the procedure set forth in Fed. R. Civ. P. 56, rather than the Meade sanctions analysis, except to note that Plaintiff has failed to comply with the time limits set forth in the *Amended Initial Pretrial Report* [Doc. No. 22] and D.N.M. LR-Civ. 7.6(a), or set forth good cause on the record why she cannot do so. The Court does *not* construe Plaintiff's failure to respond in this manner as an indication of her consent to grant the motion under D.N.M. LR-Civ. P. 7.1(b).

In applying the procedure set forth in Fed. R. Civ. P. 56, however, the Court may consider any undisputed material facts set forth in the motion papers which are deemed admitted by operation of D.N.M. LR-Civ.56.1. See LaMure v. Mut. Life Ins. Co. of N.Y., 106 F.3d 413, 1997 WL 10961, at *1 (10th Cir. 1997) (unpublished disposition); Smith v.

4

E.N.M. Med. Ctr., 72 F.3d 138, 1995 WL 749712, at *4 (10th Cir. 1995) (unpublished disposition); Waldridge v. American Hoechst Corp., 24 F.3d 918, 920-24 (7th Cir.1994) (approving use of local rule similar to D.N.M. LR-Civ. 56.1(b)).  Application of D.N.M. LR-Civ. P. 56.1 is consistent with the Tenth Circuit's holding in Reed, 312 F.3d at 1195, which specifically instructs that the "court should accept as true all material facts asserted and properly supported in the summary judgment motion" under these circumstances.

In this case, the following facts are undisputed or deemed admitted by virtue of D.N.M. LR-Civ. 56.1.  On or about March 9, 2002, Plaintiff volunteered to participate in a half-time event known as "cowboy poker" while attending a rodeo in Las Cruces, New Mexico.  [Doc. No. 25, at 2.]  Before the event began, Plaintiff was given the following explanation of "cowboy poker":

> We're going to put a table out in the corral.  You will be sitting there in a chair around the table with the other participants.  You will be dealt a hand of cards.  You will be pretending to play poker.  A bull will be released into the corral.  And the last one sitting at the table will win a prize of $200.

[Andron Dep. at 105.]  Plaintiff knew that bulls were dangerous [id. at 62, 121-22] and that the event involved an element of fear [id. at 118], but she wasn't afraid because she "didn't think anything would happen."  [Id. at 117.]  More specifically, she "didn't think that anyone would put on an event where there was potential for people to get hurt."  [Id. at 122.]

Before the event began, Plaintiff also was given a "protective jacket" to wear and was asked to fill in and sign a release form.  [Id. at 153, 170.]  Plaintiff filled in her address and telephone number on the release form and signed it.  [Id. at 159-60; Ex.3 to Doc. No. 25.]

Plaintiff is an English-reading adult but claims she did not read the form. She also acknowledges that she knew she was signing a release even though she did not read it. She understood that signing the release form meant that she was releasing Defendant from liability in the event of any harm or accident. She also understood that she was required to sign the release form in order to participate in the "cowboy poker" event. [Andron Dep. at 161, 169-70; Doc. No. 25, at 2.]

The release form is entitled "Release & Waiver of Liability and Indemnity Agreement." This title appears in bold, underlined capital letters on the form. The language following the title appears in fine print, except that the release, indemnification, and assumption of responsibility provisions are highlighted in bold capital letters at the beginning of three enumerated paragraphs. This language is not specifically directed at the "cowboy poker" event but appears to address all persons who wish to enter the "restricted areas" into which bulls or other dangerous animals are released. Similarly, the language of the release form sets forth a general waiver of liability as to all persons or entities conducting or sponsoring the rodeo (including Defendant), rather than focusing solely on the "Casper Baca Rodeo Co." identified at the top of the form. [Ex. 3 to Doc. No. 25.]

In its motion for summary judgment, Defendant asserts that Plaintiff cannot meet her burden of proof with respect to each essential element of her negligence claim. Specifically, Defendant focuses on the elements of duty and breach of duty that are required to establish such a claim. According to Defendant, the signed release form is valid under New Mexico law and operates to bar Plaintiff from any recovery on her negligence claim. Defendant

6

further contends that, as a matter of law, the doctrines of primary and express assumption of risk preclude Plaintiff from meeting her burden of proving that Defendant had a legal duty or breached that duty so as to constitute negligence in this instance.

While this action was pending, the New Mexico Supreme Court addressed the validity of liability releases such as the one at issue here.  See Berlangieri v. Running Elk Corp., 2003-NMSC-024, 134 N.M. 341, 76 P.3d 1098.  As a result of this ruling, New Mexico law retains "the general rule that liability releases for personal injury may be enforced in limited circumstances."  Id. ¶ 27.  Specific exceptions to this general rule may arise from public policy.  Id.

In order to determine whether the release at issue here was executed under the "limited circumstances" in which the general rule cited above applies, the Court must first "look to the specific language of the release to determine whether it is sufficiently clear and unambiguous that it would inform the person signing it of its meaning."  Id. ¶ 29.  To be enforceable, the language in the release must have "such clarity that a person without legal training can understand the agreement he or she has made."  Id. ¶ 33.

While the release form signed by Plaintiff has some of the same shortcomings as the release at issue in Berlangieri, it is sufficiently clear to be enforceable under the criteria set forth by the New Mexico Supreme Court in that case.  On balance, a person without legal training should be able to understand its meaning, and it has only one reasonable interpretation.  As in Berlanghieri, the title of the release form, which appears in bold, underlined capital letters, is a "helpful signal."  Id. ¶ 35.  Further, the release form is a short,

7

one-page document that is "appropriately labeled." Id. ¶ 36. Applying the Berlangieri criteria, Defendant has made a *prima facie* showing pursuant to Fed. R. Civ. P. 56 that the language of the release form is sufficient to constitute an enforceable agreement.

The next inquiry is "whether the release is affected with a public interest such that it is unenforceable as contrary to public policy." Id. ¶ 38. In conducting this inquiry, courts consider whether the transaction at issue exhibits some or all of the following characteristics:

> [1] It concerns a business of a type generally thought suitable for public regulation. [2] The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. [3] The party holds himself [or herself] out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards. [4] As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his [or her] services. [5] In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence. [6] Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his [or her] agents.

Id. ¶ 39 (quoting Tunkl v. Regents of Univ. of Cal., 383 P.2d 441, 445-46 (1963)).

The first of these characteristics does not weigh in Plaintiff's favor because the release she signed in this case does not concern a business of a type generally thought suitable for public regulation. Plaintiff has identified no statute or other public regulation, such as the Equine Liability Act at issue in Berlangieri, which evinces a public policy that persons or entities such as Defendant should always be accountable for their negligence in conducting

8

events such as "cowboy poker" in the restricted areas of a rodeo.  This factor is of particular significance because the policy expressed in the Equine Liability Act weighed heavily in the New Mexico Supreme Court's determination that the release signed by Mr. Berlangieri was unenforceable.  See id. ¶ 52.  Such an expression of public policy by the Legislature is not present here.

The second characteristic also does not weigh in Plaintiff's favor because "cowboy poker" or other rodeo events of this nature have "not been shown to be a service of 'practical necessity' to the public, such as a utility service."  Id. ¶ 51.  The only benefits that the "cowboy poker" event offered to Plaintiff were the opportunity to win a $200 cash prize, and the simple enjoyment of participating in the event itself.  These minor benefits bear no analogy to those typically at issue in situations where liability releases are considered unenforceable.  See, e.g., Tunkl, 383 P.2d at 447 (medical care); Sw. Pub. Serv. Co. v. Artesia Alfalfa Growers' Ass'n, 67 N.M. 108, 120, 353 P.2d 62, 70 (1960) (electricity); 2 E. Allan Farnsworth, Farnsworth on Contracts § 5.2, at 14 (2d ed. 1998) (residential leases).

It follows that the third, fourth, and fifth characteristics also do not weigh in Plaintiff's favor to any significant degree.  While the "cowboy poker" event at issue in this case arguably was open to any member of the audience who volunteered in time and agreed to sign the release, this event did not involve a service of great importance or practical necessity to the public, nor did it involve a service of a type generally thought suitable for public regulation.  Because the service at issue lacked these characteristics, Defendant did not possess a decisive advantage in bargaining strength or present Plaintiff with a quandary

9

in which she had no practical alternative but to participate in the event under a waiver of liability. See Berlangieri, 2003-NMSC-024, ¶ 51 (recognizing that these characteristics are "interrelated because superior bargaining power is more likely to exist when the service is of practical necessity to the public").

Rather, Plaintiff was free to forego the benefits of participating in the event if she did not wish to release Defendant from liability for negligence. After signing the release, she also was free to leave the restricted area of the arena before the bull was released. The only reason for remaining present at the "cowboy poker" table after the bull was released was Plaintiff's interest in winning the $200 cash prize.

Once the bull was released, the event in question did present a situation in which Plaintiff was placed under the control of Defendant to a significant degree, such that she could be subject to the risk of carelessness by Defendant or its agents. As in Berlangieri, it is reasonable to infer that the Plaintiff in this case was a novice participant, relying extensively on the advice or instructions given to her by the rodeo staff or other participants as to how she should extricate herself from the situation and avoid or mitigate her injuries when the bull began to charge the "cowboy poker" table at which she was seated. See id. ¶ 50.

While this characteristic of the event may weigh in Plaintiff's favor to some degree, the other characteristics discussed above weigh more heavily in favor of enforcing the release that she signed in this case, at least for purposes of satisfying Defendant's initial burden of making a *prima facie* showing that summary judgment is appropriate under Fed. R. Civ. P.

56. To conclude otherwise would allow the public-policy exception to swallow the general rule that such releases are enforceable, as the simple fact that Plaintiff placed herself in a situation where she was subject to the risk of carelessness by the Defendant would then become dispositive and render the release unenforceable.

When compared to the risks that "cowboy poker" presents, it may be the case that this type of event is of such limited social utility that it should be banned or restricted from public access. Under the New Mexico Supreme Court's analysis in Berlangieri, however, such determinations are usually left to the Legislature in the first instance. See id. ¶ ¶13, 15. Moreover, the public-policy considerations supporting such a result may be overridden by countervailing policies that weigh in favor of individual liberty and freedom to contract-- even with respect to activities that may be viewed as foolish or dangerous. See id. ¶¶ 19-20. In this instance, Defendant has met its initial burden under Fed. R. Civ. P. 56 of showing that the release signed by Plaintiff is enforceable and not subject to the public-policy exceptions discussed in Berlangieri.

Having concluded that Defendant made this showing with respect to the enforceability of the release signed by Plaintiff, I further conclude as a matter of law that the doctrine of express assumption of risk precludes Plaintiff from satisfying all the essential elements of her negligence claim in this case. "Express assumption of risk is a doctrine that operates to bar all recovery" and serves "a means of effectuating an agreement between the parties." Id. ¶ 24. The New Mexico Supreme Court has expressly declined to abolish this doctrine. See id. ¶ 25.

For purposes of Fed. R. Civ. P. 56, Defendant has made a *prima facie* showing that this doctrine applies here to effectuate the agreement of the parties as reflected in the release form that Plaintiff signed prior to her participation in the "cowboy poker" event. Plaintiff has not come forward with admissible evidence that her injuries resulted from intentional misconduct or other exceptional circumstances in which liability cannot be limited by such an agreement. Accordingly, Defendant is entitled to summary judgment on Plaintiff's negligence claim based on the application of the doctrine of express assumption of risk.

In light of this conclusion, I find it unnecessary to decide the more difficult question of whether the doctrine of primary assumption of risk also applies here. According to the New Mexico Court of Appeals, "primary assumption of risk remains within our jurisprudence as a shorthand for a judicial declaration of no duty of ordinary care, or no breach of that duty, depending on the circumstances of a particular relationship between the parties." Yount v. Johnson, 1996-NMCA-046, ¶ 19, 121 N.M. 585, 915 P.2d 341. As Defendant points out, this doctrine serves to narrow the scope of the parties' legal duties to one another in a variety of organized sporting activities. See, e.g., Knight v. Jewett, 834 P.2d 696, 704-05 (1992) (applying this doctrine to a game of touch football); see generally Assumption of Risk Defense in Sports or Recreation Injury Cases, 30 Am. Jur. Proof of Facts 3d 161, § 5 (2003).

Under existing precedents, it is not clear whether a game of "cowboy poker" played by volunteers from a rodeo audience at half-time would qualify as such an organized sporting activity, or whether this game would be regarded as more analogous to the kind of informal

"horseplay" that was found not to "merit any specially defined duty" in Yount, 1996-NMCA-046, ¶ 21.  As a federal district court exercising diversity jurisdiction, I find it unnecessary and inappropriate to make a judicial declaration of what the State of New Mexico's policy should be with regard to the scope of legal duties arising from a game of "cowboy poker," except insofar as those duties are defined by an enforceable contract between the parties under the doctrine of express assumption of risk.

### III.    CONCLUSION

For the foregoing reasons, Defendant Torgerson Motor Sports, L.L.C., is entitled to summary judgment based on undisputed material facts regarding the negligence claim asserted in Count I of Plaintiff's *Complaint*.  As all other claims and parties were previously dismissed by stipulation of the parties, I conclude that this action is to be dismissed with prejudice.

**IT IS, THEREFORE, ORDERED** that Defendant *Torgerson Motor Sports, L.L.C.'s Motion for Summary Judgment* [Doc. No. 25] is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED WITH PREJUDICE** as to all claims and all parties.

**SO ORDERED**, this 15th day of December, 2004, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge